Sarah Allen, Administratrix, Appellee, v. Springfield Consolidated Railway Company, Appellant.

VERDICT—*when set aside as against the weight of the evidence.*
A verdict clearly against the preponderance of the evidence will be set aside on review.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Sangamon county; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the November term, 1907. Reversed and remanded. Opinion filed April 21, 1908.

WILSON, WARREN & CHILD, for appellant.

JOHN C. SNIGG and JOHN G. FRIEDMEYER, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

Appellee recovered a verdict and judgment against

appellant for $4,000 for wrongfully causing the death of her intestate, Thomas J. Coyne.

The first count of the declaration alleges that the deceased became a passenger for hire on one of the street cars of appellant and that he alighted from said car for the purpose of permitting another passenger to alight, and with the intention of again boarding said car; that after he had so alighted and while in the exercise of due care he was attempting to board said car, the servants of appellant negligently and without giving him sufficient time to board said car started the same forward whereby he was thrown therefrom to the ground, etc. The second count alleges that while the deceased in the exercise of due care was attempting to board said car, and had gotten onto the first step of said car, the servants of appellant negligently caused said car to be started, whereby, etc.

Numerous errors are assigned by appellant and relied upon for a reversal of the judgment, but in the view we are disposed to take of the case, it will only be necessary to consider and determine the assignment that the verdict of the jury is against the manifest weight of the evidence. Upon another trial of the case, if one is had, the other errors assigned, should, and doubtless will be, eliminated.

It is uncontroverted, that between 8 and 9 o'clock in the morning of February 15, 1906, the deceased was seen by a policeman sitting on the edge of the sidewalk at the corner of Fifth and Monroe streets; that he was then intoxicated and asleep; that the policeman awoke him and told him he would either have to get off the street or go home, and deceased expressed his willingness to go home; that he was asked his name, where he lived, and what car he took to reach home, and when the Governor street car, being the car designated by him, reached that place, he was assisted on to it by the policeman. The conductor on the car testified that he also helped to put the deceased on the car; that in reply to his inquiry, the deceased said he de-

sired to get off at Smith street; that when the car stopped at the crossing on Lincoln avenue, the deceased started to get off and he told him it was not Smith street, and that the deceased said he would get off there anyway; that a little girl was then about to leave the car at that place and he asked deceased to wait until she had alighted; that the deceased did so and then as he stepped out of the car he took hold of the handle on the outside, on the north side of the car, with his right hand and turned around and attempted to catch the other handle with his left hand, but missed it and fell to the ground; that during all of that time the car had not moved.

The only evidence in the record in support of the allegations in the declaration is the testimony of James Coyne, a son of the deceased, aged 14 years, who testified that as he was going to school he saw his father on the car at the Lincoln avenue crossing, immediately after a lady had left the car; that his father had hold of the bar of the car and his left foot was on the car; that the car started up with a jerk and his father held on and shouted, "Wait a minute;" that the conductor said nothing and the car proceeded westward; that his father could hold on no longer and fell off. On cross-examination he testified that he was about half a block west of Lincoln avenue when he first saw his father; that the car was then standing still on the crossing; that his father was standing holding the bar and had his foot on the step of the car; that as soon as the lady alighted from the car, the conductor rang the bell and the car started forward and did not stop again; that before his father boarded the car he heard him call out, "Wait a minute;" that the car then proceeded at full speed and his father could not hold on any longer and fell off about half a block from Lincoln avenue, and that he walked to where his father was lying and picked him up. Upon re-cross examination he testified that he was within 12 feet of the car when the conductor rang the bell; that he ran from the

middle of the block to Lincoln avenue and was there when the car started, and then ran back again to the middle of the block where his father fell off.

Aside from the testimony of the conductor and motorman, which is in direct conflict with the testimony of James Coyne, five disinterested persons testified as witnesses on behalf of appellant. Charlotte York testified that she was on her front porch and saw the car when it stopped at the crossing on Lincoln avenue; that she then saw the deceased on his hands and knees and saw the conductor lift him up; that when the car started west again she saw the deceased standing by the fence on the south side of the street. Mrs. Nannie Asa testified that she saw the deceased stagger across the street to the corner and that when he had reached the south side of Governor street the car had traveled about 40 feet west of Lincoln avenue. Mrs. W. W. Waggoner testified that she did not see the deceased fall, but she saw him when he was led across the track and saw him start over to the corner, where he leaned or fell against the fence; that the car was then standing at the usual stopping place. Martha Field testified that she saw the car cross Lincoln avenue and saw the deceased go around the rear of the car as it was standing at the crossing; that he then staggered over to the corner, and after he crossed the street the car pulled out; that he was standing by the fence when the car started. W. D. Asa testified that he saw the deceased on the ground and that the car was then standing at the crossing; and that the deceased had crossed the track on his way to the south side of the street before the car moved.

It is apparent from a consideration of the foregoing, that the testimony of the five distinterested witnesses named, corroborates the testimony of the conductor and motorman in all substantial particulars, and that it is in direct conflict with the testimony of James Coyne, the only witness relied upon by appellee to sus-

tain her case. The apparent contradictions and inconsistencies in the testimony of the last named witness, clearly indicate that he was either hopelessly confused while testifying or grossly mistaken in his narration of the facts.

If, as the great preponderance of the evidence tends to show, the deceased, while intoxicated, and by reason of such intoxication, fell from the street car in attempting to alight therefrom, while the same was stationary at the crossing, appellant is not liable.

Because the verdict of the jury is contrary to the manifest weight of the evidence in the case, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*